## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| MITHILIA R. VENKATRAMAN and | ) | Case No. 16 B 27763 |
| RANJANI VENKATRAMAN | ) | |
| _____Debtors_____ | ) | Hon. A. Benjamin Goldgar |
| CYSTEMS LOGIC, INC., a California | ) | |
| Corporation | ) | |
| Adversary Plaintiff | ) | Adversary No. _____ |
| -vs- | ) | |
| | ) | **Adversary Return Date and Time**: |
| MITHILIA R. VENKATRAMAN and | ) | |
| RANJANI VENKATRAMAN | ) | September 29, 2017 at 1:30 a.m. |
| Adversary Defendants | ) | Round Lake Beach Courthouse |

**ADVERSARY COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF
A DEBT UNDER 11 USC §§523(a)(2)(A) and (a)(6) and OBJECTING TO
DISCHARGE UNDER 11 USC §727(a)(3), (a)(4) and (a)(5).**

NOW COMES your Adversary Plaintiff, CYSTEMS LOGIC, INC., ("CYSTEMS") a California corporation**,** by and through its attorneys, Herman J. Marino and Danielle K. Kegley, and in and for its Adversary Complaint to Determine Nondischargeability of a Debt under 11 USC §523(a)(2)(A) and (a)(6) of the Bankruptcy Code and Objecting to the Debtors' Discharge under 11 USC §727(a)(3), (a)(4) and (a)(5) of the Bankruptcy Code, and hereby states as follows:

### INTRODUCTION AND PLAINTIFF'S SUMMARY OF THE CASE

CYSTEMS brings this action to obtain a determination of non-dischargeability of the Judgment obtained by CYSTEMS against Azur Infotech, Inc., the Debtors' wholly-owned company, in the amount of **$377,701.24,** which the Debtors scheduled as a "business debt" that was "not subject to offset" and was not "contingent, unliquidated or disputed." CYSTEMS seeks judgment under Bankruptcy Code §523(a)(2)(A) since

services were provided to the Debtors based upon false statements and/or the actual fraud

of the Debtors. In addition or in the alternative, CYSTEMS seeks a judgment of

nondischargeability under Bankruptcy Code §523(a)(6) based upon the willful and

malicious acts of the Debtors.

In addition, CYSTEMS objects to the discharge of the Debtors under Bankruptcy

Code §§727(a)(3), (a)(4) and (a)(5).The Debtors: (i) failed to maintain and preserve

material business records; (ii) made false statements under oath regarding their property;

and, (iii) have not produced all material financial records relating to their extensive,

worldwide business operations, conducted through 6 separate entities, including:

| | |
|---|---|
| (i) | False statements made under oath at their Creditors meeting and in their Initial and Amended Bankruptcy Schedules and Statement of Financial Affairs; |
| (ii) | Refusal to produce a complete set of income tax returns for no fewer than 5 US entities and an offshore entity (limited liability company organized in India) owned directly by the Debtors  for the 4 years prior to filing their petition; |
| (iii) | Failure to fully and accurately disclose all bank accounts in which the Debtors have an interest or to produce a complete set of bank records for the 12 month period prior to the filing of the petition; |
| (iv) | Failure to fully and accurately disclose their interest in, and fully produce documents relating to no fewer than 3 offshore bank accounts funded with cash transfers from the Debtors' US accounts to their offshore accounts totaling (as of March 31, 2015) over **$10,000,000**; |
| (v) | Failure to fully and accurately disclose their interest in, and fully produce documents relating an additional 10 foreign bank accounts which as of December 31, 2015 had a balance of not less than **$300,000**; |
| (vi) | Refusal to produce or maintain or preserve *any* of the Debtors' QuickBooks accounting records for their business transactions for any period, which Ranjani testified was the only location for all of their accounting, financial and business records; |
| (vii) | Refusal to produce, maintain or preserve *any* email or other written communications relating to their businesses or financial transactions. |
| (viii) | Failure to produce copies of personal and business financial statements submitted to Wells Fargo Bank and other credit and financial institutions. |

## JURISDICTION AND VENUE

1.      On August 31, 2016, MITHILIA R. VENKATRAMAN ("Mithilia") and

RANJANI VENKATRAMAN ("Ranjani") (collectively the "Debtors") filed a Voluntary

Petition for relief under Chapter 7 of the United States Bankruptcy Code (the

"Bankruptcy Case"), and in connection with that case, filed various schedules and

statement of financial affairs.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157,

1334 and Internal Operating Procedure 15(a) of the United States District Court for the

Northern District of Illinois.

3.      Venue of the above-captioned case (the "Case") and of this matter is

proper in this Judicial District pursuant to 28 U.S.C. §§1408 and 1409.

4.      This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I).

## PARTIES

5.      The Debtors are married individuals residing in Vernon Hills, Lake

County, Illinois.

6.      The Adversary Plaintiff Cystems Logic, Inc. ("CYSTEMS"), is and at all

relevant times was a California corporation with its principal place of business in the state

of California.

7.      CYSTEMS is a creditor of the Debtors by virtue of a judgment in its favor

and against AZUR, Inc. d/b/a AZUR INFOTECH, INC. entered September 21, 2016 in

the amount of **$377,701.24** (the "Judgment') in the case more commonly known as

3

*Cystems Logic, Inc. v. Azur, Inc.,* Case No. 16 CV 2603, formerly pending in the United

States District Court for the Northern District of Illinois (the "Cystems Judgment").

8.      In their Initial Bankruptcy Schedules filed September 16, 2016, the

Debtors listed the debt owed to Cystems in the amount of **$322, 930.31.** The Debtors

scheduled the debt as "not subject to offset" and did not list the debt as "contingent,

unliquidated or disputed."  (See docket entry No 11, page 11 of 57).

9.      Subsequent to the Creditors' meeting, on June 27, 2017, the Debtors

amended their Bankruptcy Schedules, again listing the debt owed to CYSTEMS as a

"business debt" in the amount of **$322,930.31.** The Debtors again scheduled the debt as

"not subject to offset" and did not list the debt as "contingent, unliquidated or disputed."

(See docket entry 78, page 14 of 41).

## ALLEGATIONS COMMON TO ALL COUNTS AND INCORPORATED BY REFERENCE.

10.     The Debtors' Initial Statement of Financial Affairs and Amended

Statement of Financial Affairs and Bankruptcy Schedules failed to fully and completely

disclose all information, including business and financial records, pertaining to the

business transactions and financial affairs of the Debtors generally, and for the 12-month

period prior to the filing of the petition, as set forth below

11.     On September 16, 2016, the Debtors filed their initial Bankruptcy

Schedules and Statement of Financial Affairs.

12.     The Debtors' Statement of Financial Affairs were signed under penalties

of perjury when filed on September 19, 2016.

4

13.    On or about October 6, 2016, the Debtors attended their meeting of creditors conducted by the Chapter 7 Trustee, Ilene Goldstein. At that creditor's meeting each Debtor testified under oath that the Bankruptcy Schedules and Statement of Financial Affairs filed September 16, 2016 were true, accurate and complete.

14.    During the Creditor's meeting, the Debtors acknowledged that their disclosures in Line 27 of their Statement of Financial Affairs was false because they failed to disclose all of their business interests provide the detailed information as to these businesses as required by Section 27.

15.    Specifically, the Debtors admitted that they did not disclose the name of or their interest in Azur, Inc., Azur Infotech Inc. and Azur Global, Inc., and only listed 2 "shell companies" (Ignis Performance, LLC and Rezilyens, LLC). As set forth below: (i) none of the information required by Section 27 was ever provided by the Debtors in their Amended Schedules; and (ii) the Debtors failed to disclose at their Creditors meeting their interest in 3 additional companies that were not scheduled in their Initial Bankruptcy Schedules. (See ¶¶37-45 below).

16.    At their Creditor's meeting, the Debtors also testified that they had no direct interest in Bharat Azur IT Private, Ltd. ("Bharat Azur") which they asserted was a "subsidiary of Azur Infotech, Inc.," which the Debtors admitted is and was an "S" corporation under the U.S. Internal Revenue Code. As set forth more fully below, this statement was false and known by the Debtors to be false because: (i) documents produced by the Debtors during June 2017—after completion of their 2004 examination—shows that the shares of Bharat Azur were issued to the Debtors, not to Azur Infotech, Inc.; and (ii) since Azur is an S corporation, it is barred from having as a

subsidiary a non-US corporation under IRS Section 1361(b)(3)(B). None of the shares of Bharat Azur were ever scheduled in the Debtors Initial or Amended Bankruptcy Schedules or Statement of Financial Affairs. (See ¶¶29-36 below).

17.    At their Creditor's meeting, Mithilia testified that he had contributed "hundreds of thousands of dollars" of his personal money to Azur, yet could not explain why the 2015 balance sheet for Azur only shows a capital contribution of $20,000. He testified that he would provide evidence of the capital contributions. No such evidence or documents were produced at or during his 2004 Examination, and none were disclosed in his Amended Bankruptcy Schedules filed June 27, 2017

18.    On October 28, 2016, this Court granted CYSTEMS leave to issue a subpoena upon Mr. Robert Lee, CPA, of Emmett Financial Services, 13719 West Laurel Avenue, Lake Forest Illinois. 60045, the CPA who prepared the tax returns for the Debtors for 2013.

19.    On November 23, 2016, this Court granted CYSTEMS leave to conduct the 2004 Examination of each Debtor and to issue Subpoenas for Document Production with the 2004 Examination. A Subpoena with a separate request for production was served upon each Debtor seeking, among other things, all documents pertaining to their bank accounts; all federal and state income tax returns; all financial statements submitted by the Debtors to any financial institution; all documents relating to any business owned by the Debtors individually or in which either Debtor had an interest, along with all checking accounts, bank statements QuickBooks journals, financial statements and all other documents pertaining to the businesses disclosed in the Debtors' Initial Bankruptcy Schedules:

6

Azur Infotech, Inc.
Azur, Inc.
Azur Global, Inc.
Ignis Performance, LLC
Rezilyens LLC

20.     CYSTEMS conducted an oral examination of Ranjani on June 7, 2017 (the

"2004 Examination"). The Debtors did not file a response to the document request and

did not produce all of their documents sought in the Subpoena issued as a part of their

2004 examination. The following documents were not produced at or prior to the 2004

Examination:

a.     Copies of any income tax returns for any of the following entities:
          Azur, Inc.
          Azur Global, Inc.
          Ignis Performance, LLC
          Rezilyens LLC

b.     Copies of the 2016 Corporate Income Tax Returns (Form 1120S) for Azur Infotech, Inc.

c.     Copies of the Debtors' Form 1040 for 2016.

d.     Copies of any email communications involving the Debtors and ` any of their businesses, which Ranjani testified were "no longer available."

e.     Copies of any QuickBooks accounting records, including financial statement, journal entries, supporting schedules or trial balances, which Ranjani testified were "no longer available" and were "permanently deleted.

f.     Copies of bank accounts for LFLN, Inc. or Ignis Performance, LLC.

g.     Documents related to the formation, existence or operation of LFLN, Inc, Ignis Performance, LLC and Rezilyens, LLC, including but not limited to articles of organization, stock certificates, by-laws, operating agreements, minutes of board meetings, minutes of shareholder meetings, or annual reports.

    h.      Check registers or cancelled checks for any bank accounts in which either Debtor had an interest.

    i.      Bank statements for all bank accounts for the full 12 month period prior to the filing of the bankruptcy petition.

    j.      Personal or business financial statements submitted to any bank or financial institution.

21.    In her 2004 Examination, Ranjani admitted that she was the person responsible for maintaining the financial records for all of the Debtors' businesses; that all documents pertaining to the financial transaction for its primary businesses, Azur and Bharat Azur, were maintained using the QuickBooks accounting system; that all invoices, work orders, contracts, and other documents were reduced to "pdf" files and maintained on the QuickBooks accounting system; but none of those records could be produced because the Debtors failed to pay their QuickBooks charges and therefore, those records "could no longer be accessed."

22.    In her 2004 Examination, Ranjani admitted that the Debtors conducted the business of Azur and Bharat via email, and yet have produced not a single email for their financial or business transactions or those of Azur or Bharat. Ranjani asserted that no emails could be produced, again because the Debtors supposedly failed to pay the charges of their email provider, and therefore, those records "could no longer be accessed," and had been "permanently deleted."

23.    During June 2017—after completion of her 2004 examination— Ranjani sent CYSTEMS' counsel her email acknowledging that all personal and business emails of the Debtors had been "permanently deleted." (See true and exact copy attached hereto as **Exhibit 1**).

24.    Under Statement of Financial Affairs No. 28, the Debtors were required to

disclose personal or business financial statements submitted to any bank or lender.

25.    The Debtors' Initial Statement of Financial Affairs No. 28 stated that they had no financial statements.

26.    In the subpoena served prior to the 2004 examination, the Debtors were asked to produce any personal or business financial statement submitted within the past 2 years. At no time prior to, during or after the 2004 examination did the Debtors produce any such financial statements.

27.    The Debtors' Amended Statement of Financial Affairs No. 28, filed June 27, 2017, stated that a financial statement had been submitted to Wells Fargo. To date, no such financial statement has been produced to CYSTEMS by the Debtors.

28.    After completion of Ranjani's 2004 examination, the Debtors produced various bank records and corporate documents that were not produced at or prior to the 2004 examination. Nonetheless, as of the filing of this Adversary Complaint, the following documents still have not been produced:

    a.    Copies of any income tax returns for any of the following entities:
        Azur, Inc.
        Azur Global, Inc.
        Ignis Performance, LLC
        Rezilyens LLC

    b.    Copies of the 2016 Corporate income Tax Returns (Form 1120S) for Azur Infotech, Inc.

    c.    Copies of the Debtors' Form 1040 for 2016.

    d.    Copies of any email communications involving the Debtors and ` any of  their businesses.

    e.    Copies of any QuickBooks accounting records, including financial statement, journal entries, supporting schedules or trial balances.

      f.        Copies of bank accounts for LFLN, Inc. or Ignis Performance, LLC.

      g.       Documents related to the formation, existence or operation of LFLN, Inc, Ignis Performance, LLC and Rezilyens, LLC, including but not limited to articles of organization, stock certificates, by-laws, operating agreements, minutes of board meetings, minutes of shareholder meetings, or annual reports.

      h.       Check registers or cancelled checks for any bank accounts in which either Debtor had an interest.

      i.        Bank statements for all bank accounts for the full 12 month period prior to the filing of the bankruptcy petition.

      j.        Personal or business financial statements submitted to any bank or financial institution.

**A.      The Debtors falsely testified at their Creditor's meeting that they owned no shares in Bharat Azur IT Private, Ltd., and their Initial and Amended Bankruptcy Schedules failed to fully and accurately disclose their ownership interest in that company.**

      29.     On September 16, 2016, the Debtors filed various Bankruptcy Schedules and a Statement of Financial Affairs. Part 11, Section 27 of the Debtors' Statement of Financial Affairs requires the Debtors to "give details about your business connections to any business," and state "whether within 4 years of the filing of the bankruptcy petition they owned a business or have any of the following connections to any business:

        "a sole proprietorship or self-employed in a trade or profession (either full or part time); a member of a limited liability company or limited liability partnership; partner in a partnership; officer, director or managing executive of a corporation; or owner of at least 5% of the voting or equity securities of a corporation."

      30.     In their Initial Statement of Financial Affairs filed September 16, 2016, the Debtors left the entire Section 27 of Part 11 blank, and failed to identify their connections to any business within the last 4 years.  The Debtors' Initial Statement of

Financial Affairs also stated that their only connection to any business within the last 4

years was to the following two (2) businesses:

> Ignis Performance, LLC
> Rezilyens LLC

31.     The Debtors' Initial Statement of Financial Affairs and Bankruptcy

Schedules filed September 16, 2016 failed to disclose the Debtors' ownership, and the

nature, location and name of the following business, owned operated by the Debtors in

India: Bharat Azur IT Private Limited ("Bharat Azur").

32.     At their Creditor's meeting, the Debtors testified that they had no direct

ownership interest in Bharat Azur, which they asserted was a "subsidiary of Azur

Infotech, Inc." This statement was false and known by the Debtors to be false. The

organization documents produced by the Debtors during June 2017—after completion of

Ranjani's 2004 examination—shows 10,000 issued and outstanding shares; 5,000 issued

to Mithilia and 5,000 issued to Ranjani. (See true and exact copy attached as **Exhibit 2**).

No documents have ever been produced by the Debtors evidencing any shares issued to

Azur Infotech, Inc.

33.     After Ranjani's 2004 examination, the Debtors' Amended their

Bankruptcy Schedules filed June 26, 2017 admitting that they conducted business

through a series of multiple interconnected entities in the United States and India, that are

and at all relevant times were wholly-owned and operated by the Debtors, including:

> Azur Infotech, Inc.
> Azur, Inc.
> Azur Global, Inc.
> LFLN, Inc.
> Ignis Performance, LLC

Rezilyens LLC

34.      The Debtors' Amended Statement of Financial Affairs and Amended

Schedules filed June 27, 2017 continued to fail to disclose the nature, location and name of,

or the ownership of the shares in Bharat Azur.

35.      As set forth more fully below, as of March 31, 2015, Bharat Azur has cash in

three separate offshore bank accounts controlled by the Debtors in an amount in excess of

**$10,000,000**. (See ¶¶46-60 below).

36.      No income tax returns or accounting records for Bharat Azur were

produced or disclosed at any time.

**B.      Debtors' Initial Bankruptcy Schedules failed to fully and accurately disclose
all businesses in which the Debtors have or had an interest for the 1-year
period prior to filing the petition.**

37.      On September 16, 2016, the Debtors filed various Bankruptcy Schedules

and a Statement of Financial Affairs. Part 11, Section 27 of the Debtors' Statement of

Financial Affairs requires the Debtors to "give details about your business connections to

any business," and state "whether within 4 years of the filing of the bankruptcy petition

they owned a business or have any of the following connections to any business:

        "a sole proprietorship or self-employed in a trade or profession (either full
        or part time); a member of a limited liability company or limited liability
        partnership; partner in a partnership; officer, director or managing
        executive of a corporation; or owner of at least 5% of the voting or equity
        securities of a corporation."

38.      In their Initial Statement of Financial Affairs filed September 16, 2016,

the Debtors left the entire Section 27 of Part 11 blank, and failed to identify their

connections to any business within the last 4 years.  The Debtors' Initial Statement of

Financial Affairs also stated that their only connection to any business within the last 4 years was to the following two (2) businesses:

> Ignis Performance, LLC
> Rezilyens LLC

39.    The Debtors' Initial Statement of Financial Affairs filed September 16, 2016 failed to identify the following businesses in which they had an interest during the 4 years prior to the filing of the petition:

> Azur Infotech, Inc.
> Azur, Inc.
> Azur Global, Inc.
> Bharat Azur IT Private Limited.
> LFLN, Inc.

40.    After Ranjani's 2004 examination, the Debtors' Amended their Bankruptcy Schedules filed June 26, 2017 admitting that they conducted business through a series of multiple interconnected entities in the United States and India, that are and at all relevant times were wholly-owned and operated by the Debtors, including:

> Azur Infotech, Inc.
> Azur, Inc.
> Azur Global, Inc.
> LFLN, Inc.
> Ignis Performance, LLC
> Rezilyens LLC

41.    The Debtors did not routinely keep records for any of these 6 entities in the course of its business affairs, including the 3 Azur companies and Bharat Azur.

42.    The Debtors' Amended Bankruptcy Schedules filed June 26, 2017 admit that they formed and owned the following businesses:

LFLN, Inc.
Ignis Performance, LLC
Rezilyens LLC

43.     No information or copies of bank accounts for LFLN, Inc. or Ignis Performance, LLC were produced or disclosed by the Debtors.

44.     No documents regarding the formation, existence or operation of LFLN, Inc, Ignis Performance, LLC and Rezilyens, LLC were disclosed or produced, including but not limited to articles of organization, stock certificates, by-laws, operating agreements, minutes of board meetings, minutes of shareholder meetings, or annual reports. No income tax returns were produced or disclosed for LFLN, Inc, Ignis Performance, LLC or Rezilyens, LLC., or Bharat Azur.

45.     The Debtors Amended Statement of Financial Affairs No. 27 stated that the business of Rezilynes, LLC was a vague reference to "technology products" and its operations ended in 2016. Nonetheless, the bank statements for Rezilyens, LLC show thriving business activities after the date of filing the bankruptcy petition and during 2017. Those bank statements show monthly deposits of over $10,000.00 equaled by withdrawals by Ranjani of at least $10,000.00 per month. The Debtors' characterization of Rezilyens, LLC in their Statement of Financial Affairs is inaccurate, and has not been adequately explained.

**C.     Debtors failed to fully and accurately disclose all bank accounts where the Debtors were the authorized signers.**

46.     Part 8, Question 20 of the Statement of Financial Affairs, requires the Debtors to disclose the following in which the Debtors had an interest within one year of the bankruptcy filing:

14

…any financial accounts held in your name or for you benefit, closed sold moved or transferred. Include checking, savings, money market or other financial accounts; certificates of deposit shares in banks, credit unions brokerage houses, pension funds, cooperatives, associations or other financial institutions"

47.    The Debtors' Statement No. 20 filed with their Initial Statement of Financial Affairs on September 16, 2016 answered that they had no such bank accounts and provided no details of any such accounts.

48.    The Debtors' Amended Statement No. 20 filed June 27, 2017 answered that they had no such bank accounts and provided no details of any such accounts.

49.    Documents disclosed by the Debtors during Ranjani's 2004 examination show that through the Azur network of companies in the U.S., the Debtors regularly transferred substantial sums of cash from Azur's bank accounts in the United States to the Bharat bank accounts in India. The limited bank records produced by the Debtors for Bharat Azur show that as of March 31, 2015, the bank accounts in India had a balance totaling over $10,000,000 (US). None of these matters were voluntarily disclosed in the Debtors' Initial or Amended Statement of Financial Affairs or Amended Bankruptcy Schedules.

50.    For the years 2014 and 2015, Mithila disclosed to the IRS his interest in no fewer than 11 foreign bank accounts. None of those banks accounts were disclosed in the Debtors' Initial or Amended Statement of Financial Affairs No. 8, "List of certain financial accounts, instruments, safe deposit boxes and storage units." The disclosures made to the IRS were in IRS Forms submitted to the IRS and signed by Mithilia under penalties of perjury.

51.     For the years 2014 and 2015, Ranjani disclosed to the IRS her interest in no fewer than 3 foreign bank accounts. None of those banks accounts were disclosed in the Debtors' Initial or Amended Statement of Financial Affairs No. 8, "List of certain financial accounts, instruments, safe deposit boxes and storage units." The disclosures made to the IRS were in IRS Forms submitted to the IRS and signed by Ranjani under penalties of perjury.

52.     The Debtors' Initial Statement of Financial Affairs and Bankruptcy Schedules filed September 16, 2016 failed to disclose information pertaining to any of Mithilia's 11 foreign bank accounts, or Ranjani's 3 foreign bank accounts that were disclosed to the IRS in 2014 and 2015.

53.     The Debtors' Amended Statement No. 20 filed June 27, 2017 failed to disclose that through their joint ownership of Bharat Azur Private Limited, they have an interest in three offshore bank accounts: CITI Bank and CHENNAI Bank and HDFC Bank, Ltd. These accounts were listed on the IRS Form 8938 ("Statement of Specified Foreign Financial Assets") filed with their Joint Individual Income Tax Return (Form 1040) for 2015 as accounts in which the Debtors' had an interest. The total value of those accounts disclosed in the IRS Form 8938 was $284,517. Those accounts and balances were not disclosed in the Debtors' Initial or Amended Statement No. 20.

54.     None of the Debtors' bank accounts held by them in the name of Bharat in India were disclosed in their Amended Answer to Part 8, Question 20, Statement of Financial Affairs No. 20 filed June 27, 2017

55.     During Ranjani's 2004 examination, the Debtors only provided bank records for the CITI Bank and CHENNAI Bank accounts through March 2015. The Debtors

provided no official bank records for the HDFC account; they only provided a print out of "spread sheets" that Ranjani asserted came from the bank records she could access online.

56.     The total balance in the CITI Bank and CHENNAI accounts as of March 2015 was in excess of $4,000,000.

57.     The limited records produced for the Bharat account at the CHENNAI Bank shows that the Debtors authorized withdrawals from the account to themselves and others in from the period February 1, 2014 through May 1, 2015 in excess of $7,000,000 (US). Of this amount, the bank records state that the withdrawals issued in the name of or to the Debtors or to entities under their control exceeded $1,000,000 (US) as of March 31, 2015. The Debtors have failed to explain these withdrawals, or to produce any documents supporting the purpose and manner of the disbursements.

58.     The "spreads sheets" for the HDFC account covered the period from January 2015 through March 31, 2016, and showed deposits made by the Debtors from their other offshore accounts totaling 13,522,498 Rupees or $2,163,599 (US) and withdrawals made by the Debtors or into other entities owned and controlled by the Debtors of 13,760,614 Rupees or $2,201698 (US).

59.     The Debtors' Amended Statement No. 20 filed June 27, 2017 failed to disclose their interest in the following additional bank accounts:

|         |                                   |
|---------|-----------------------------------|
| Azur    | First American Bank (#-3710)      |
| Azur    | Wells Fargo    (#-1339)           |
| Azur    | Citibank (#-2879)                 |
| Azur    | BMO Harris (#-5386)               |
| Azur    | PNC Bank (#2257)                  |
| Mithila | First Tech (#-41000)              |
| Ranjani | Great Lakes Credit Union (#0920)  |
| Ranjani | Bank of America (#-7796)          |
| Ranjani | Bank of America (#-7806)          |

60.    Further, during Ranjani's 2004 examination, the Debtors produced only limited bank records for the following bank accounts, which were produced only through the dates indicated, which did not include all statements for the full 1 year prior to the bankruptcy filing:

| | | |
|---|---|---|
| Azur | First American Bank (#-3710) | May 2016-August 2016 |
| Azur | Wells Fargo    (#-1339) | February – March 2016 |
| Azur | Citibank (#-2879) | April 2015 – May 2016 |
| Azur | BMO Harris (#-5386) | December 15 – March 2016 |
| Azur | PNC Bank (#2257) | December 2015; January 2017 |
| Mithila | First Tech (#-41000) | January- December 2014 |
| Ranjani | Greta Lakes Credit Union (#0920) | June 2016; January 2017 |

**D.    The Debtors operated Azur Infotech, Inc. as their alter ego.**

61.    At all relevant times, the Debtors conducted business through the following entities using the common assumed name of "Azur": Azur Global, Inc. Azur Inc. and "Azur Infotech, Inc." ("Azur"), each of which were Illinois corporations wholly owned by Mithila.  At all relevant times, Azur Global, Inc. and Azur Inc. conducted business under the assumed name "Azur Infotech, Inc."

62.    At all relevant times, the Debtors also conducted business in India through their wholly-owned company Bharat Azur IT Private Limited. ("Bharat" or "Bharat Azur").

63.    At all relevant times Azur and its bank accounts were controlled by the Debtors, who were the only persons with signature authority on the Azur accounts in the US and India. At all relevant times, the Debtors controlled all offshore accounts in India maintained under the name of Bharat Azur IT Private Ltd.

64.    At all relevant times, the assets and property of Azur are and were assets and property of the Debtors.

65.    The Debtors failed to maintain the separate corporate existence of Azur including, but without limitation, records showing the incorporation of Azur, its by-laws, issuance of shares; minutes of board meetings; minutes of shareholder meetings, or any other documents suggesting that its existence is separate from the Debtors.

66.    Despite the Debtors' claims in their Statement of Financial Affairs that Azur is "no longer in business," and that its payables exceed its receivables by over $2,000,000, Azur has not filed its own separate voluntary petition in bankruptcy.

67.    In fact, the Debtors have listed the corporate obligations of Azur as their unsecured obligations in their Schedules E/F as their personal unsecured creditors, highlighting the fact that the operations of Azur are a sham and simply the alter ego of the Debtors.

68.    Azur is undercapitalized, without separate books and accounting records. The Debtors did not produce Azur's tax return or balance sheet for the one-year period prior to the filing of their petition. The most recent tax return for Azur produced by the Debtors shows that as of December 31, 2014, the negative retained earnings for the corporation was -$2,175,128 and was supported by only an initial capitalization of $20,000.00. The balance sheet showed no source of third party funding to satisfy its stated unsecured liabilities exceeding $3,000,000 or its 2014 book losses exceeding $2,000,000.

69.    Azur's funds have been used to pay the personal obligations of the Debtors. The most recent tax return for Azur produced by the Debtors shows that as of December 31, 2014, corporate funds exceeding $2,000,000 were used to pay the personal expenses of the shareholders (the Debtors) and were classified as "shareholder advances."

Since the Debtors have produced no 2015 tax return or any financial records for Azur, it is impossible to ascertain the accuracy of the entries on the 2014 returns.

70.    Because Azur paid for the personal expenses and debts of the Debtors in an amount not less than $2,000,000, the business records of Azur are and were the business records of the Debtors.

71.    At all relevant times, the Debtors operated Azur as a corporate shell intending to deceive its creditors and to promote fraud by siphoning cash from its operations and transferring those funds to offshore accounts in India that are owned and under the control of the Debtors.

**E.    The Debtors operated Bharat Azur IT Private Ltd as their alter ego.**

72.    Bharat Azur IT Private Ltd. ("Bharat Azur") is a limited liability company owned and operated by the Debtors located in India.

73.    The Debtors produced no tax returns for Bharat Azur.

74.    The Debtors failed to disclose that through their ownership of Bharat Azur Private Limited, they have an interest in the following bank accounts: CITI Bank, CHENNAI Bank. The total balance in these accounts as of March 2015 was in excess of $4,000,000. The Debtors have not provided bank records for these accounts for the period April 1, 2015 through the date of filing the petition.

75.    The limited records produced for the Bharat account at the CHENNAI Bank shows that the Debtors authorized withdrawals from the account to themselves and others in from the period February 1, 2014 through May 1, 2015 in excess of $7,000,000 (US). Of this amount, the bank records state that the ATM withdrawals issued in the name of or to the Debtors or to entities under their control exceeded $1,000,000 (US) as of March 31, 2015.

The Debtors have failed to explain these withdrawals, or to produce any documents supporting the purpose and manner of the disbursements.

76.     The Debtors failed to produce any records for the operation of Bharat for any period, including but not limited to: By-Laws; minutes of board meetings; minutes of shareholder meetings; or annual reports.

77.     The Debtors failed to produce any accounting records for the operation of Bharat Azur.

78.     Within 1 year of the filing of the petition, on December 2, 2015, Mithila, entered into a contract to purchase a company in India named Sybrant Tech for cash in the amount of $40 million Rupees, or $6,400,000 (US). (A true and exact copy of the purchase agreement is attached hereto and made a part hereof as **Exhibit 3).** Mithila announced the purchase in a press release issued September 29, 2015, a true and copy of which is attached hereto as **Exhibit 4** and made a part hereof.

79.     Mithila made the purchase of Sybrant through the Debtors' company Bharat Azur in India and its bank accounts. The Debtors have failed to produce bank records for the Bharat bank accounts in India for the full year of periods after March 31, 2015, making it impossible to determine the amounts paid for the Sybrant assets.

**F.      The Debtors operated Azur Infotech, Inc. and Bharat Azur to perpetrate a fraud upon CYSTEMS.**

80.     On or about November 17, 2014, Azur entered into a Master Services Agreement with Mohawk Industries, Inc. for the development and installation of computer software interface systems, to commence in June 2015. On January 7, 2015, Azur entered into a subcontract with CYSTEMS to perform all of the installation work at Mohawk under the Master Service Agreement (the "Systems Subcontract"). A true and

exact copy of the subcontract is attached hereto, incorporated by reference, made a part hereof as **Exhibit 5**).

81.     The Master Services Agreement was authorized and signed by the Debtors, and all decisions and actions on behalf of Azur were made by the Debtors. The Cystems Subcontract was signed by Ranjani as an officer of Azur, and all decisions and actions on behalf of Azur were made by the Debtors.

82.     At all relevant times Azur and its bank accounts were controlled by the Debtors, who were the only persons with signature authority on the Azur accounts in the US and India. At all relevant times, the Debtors controlled all offshore accounts in India maintained under the name of Bharat Azur IT Private Ltd.

83.     During December 2014, Azur sold the receivable due to it from Mohawk under the Master Services Agreement to Front Range Factoring (the "Factor"). Under that factoring agreement, Mohawk made all payments due to Azur directly to the factor.

84.     Azur has failed to provide CYSTEMS with a copy of the factoring agreement or the amounts paid to it by the Factor under the factoring agreement. Ranjani testified at her 2004 examination that all Azur records for the Mohawk contract were reduced to pdf format and retained by QuickBooks, and that the Azur accounting and business records maintained by QuickBooks were either not retained by the Debtors or are not available.

85.     Mohawk confirms that a total of **$10,653,052.02** in payments due under the Master Service Agreement were made to Azur's Factor commencing in December 2014 and ending on January 25, 2016. The payments transmitted by Mohawk to the

22

Factor under the Master Service Agreement were in the following amounts on the

following dates indicated:

| Date | Amount | Azur<br>Invoice number |
|---|---|---|
| 12/12/2014 | $172,048.05 | 125 |
| 12/26/2014 | $171,942.82 | 130 |
| 1/30/2015 | $ 27,137.17 | 156 |
| 2/23/2015 | $156,000.00 | 148 |
| 2/23/2015 | $156,000.00 | 149 |
| 2/23/2015 | $156,000.00 | 150 |
| 2/23/2015 | $156,000.00 | 151 |
| 2/23/2015 | $156,000.00 | 164 |
| 2/23/2015 | $156,000.00 | 165 |
| 3/13/2015 | $136,000.00 | 173 |
| 3/13/2015 | $136,000.00 | 174 |
| 3/13/2015 | $136,000.00 | 175 |
| 4/6/2015 | $ 27,200.00 | 170 |
| 4/6/2015 | $136,000.00 | 180 |
| 4/6/2015 | $136,000.00 | 181 |
| 4/6/2015 | $136,000.00 | 182 |
| 4/27/2015 | $187,454.55 | 190 |
| 4/27/2015 | $187,454.55 | 191 |
| 4/27/2015 | $187,454.55 | 192 |
| 5/26/2015 | $187,454.55 | 204 |
| 5/26/2015 | $187,454.55 | 205 |
| 5/26/2015 | $187,454.55 | 206 |
| 5/26/2015 | $187,454.55 | 207 |
| 6/15/2015 | $355,864.00 | 213 |
| 6/15/2015 | $206,500.00 | 214 |
| 6/15/2015 | $ 24,989.75 | 215 |
| 6/22/2015 | $330,864.00 | 215 |
| 6/22/2015 | $206,500.00 | 216 |
| 7/13/2015 | $123,749.99 | 223 |
| 7/13/2015 | $340,199.64 | 224 |
| 8/3/2015 | $123,749.99 | 227 |
| 8/3/2015 | $340,199.64 | 228 |
| 8/3/2015 | $371,159.80 | 236 |
| 8/17/2015 | $173,250.00 | 256 |
| 8/24/2015 | $371,159.80 | 237 |
| 8/24/2015 | $148,500.00 | 253 |
| 8/24/2015 | $ 34,650.00 | 254 |
| 8/24/2015 | $ 34,650.00 | 3 |
| 9/8/2015 | $371,159.81 | 260 |

| | | |
|---|---|---|
| 9/21/2015 | $371,159.81 | 261 |
| 10/5/2015 | $463,949.73 | 270 |
| 10/19/2015 | $463,949.73 | 271 |
| 11/9/2015 | $371,159.81 | 284 |
| 11/23/2015 | $371,159.81 | 285 |
| 12/7/2015 | $371,159.81 | 294 |
| 12/14/2015 | $440,550.00 | 295 |
| 12/21/2015 | $ 12,038.40 | 297 |
| 12/21/2015 | $247,500.00 | 300 |
| 12/28/2015 | $371,159.81 | 293 |
| 12/28/2015 | $ 12,038.40 | 305 |
| 1/4/2016 | $198,000.00 | 306 |
| 1/25/2016 | $  8,870.00 | 321 |

**Total Payments       $10,653,052.02**

86.     Upon information and belief, as Mohawk made payments to the Factor, the Factor then wired funds into Azur's corporate accounts, primarily at the Azur Citibank Account (Account No -2879). Shortly after each funds transfer hit the Azur accounts, the Debtors arranged to wire funds from the Azur account into the offshore accounts the Debtors maintained and currently maintain in India.

87.     At all relevant times, the property and cash deposited into the accounts of Azur and Bharat Azur in India was the property of the Debtors. Accordingly, at all times the funds received from Mohawk by the Factor in an amount not less than **$10,653,052.02** were and are the property of the Debtors.

88.     Pursuant to the Cystems Subcontract, the Debtors would authorize work to be performed by CYSTEMS by issuing a written Work Orders signed by each of the parties. The Work Orders were issued by Debtors to CYSTEMS commencing January 1, 2015 through November 2, 2015.

89.     Upon completion of each installment or portion the work, CYSTEMS would submit progress billing by way of written invoices to the Debtors for work

24

performed in accordance with the Agreement and the Work Orders. Commencing

October 1, 2015 and ending January 20, 2016, CYSTEMS issued to the Debtors no fewer

than 24 invoices for the work performed during the five (5) month period commencing

September 2015 and ending in January 2016, as follows:

| Invoice Date | Invoice Number | Amount of Invoice |
|---|---|---|
| 09/01/2015 | AI-15/A1018X | $454.82 |
| 10/01/2015 | AI-15/A1019X | $651.18 |
| 11/01/2015 | AI-15/B1008 | $27,500.00 |
| 11/01/2015 | AI-15/G1003 | $13,200.00 |
| 11/01/2015 | AI-15/F1004 | $25,110.00 |
| 11/01/2015 | AI-15/C1006 | $21,230.00 |
| 11/01/2015 | AI-15/D1005 | $25,745.00 |
| 11/01/2015 | AI-15A1017 | $43,240.00 |
| 11/01/2015 | AI-1/A1020X | $1,634.54 |
| 12/01/2015 | AI-15B1009 | $13,200.00 |
| 12/01/2015 | AI-15/G1004 | $11,400.00 |
| 12/01/2015 | AI-15/F1005 | $20,970.00 |
| 12/01/2015 | AI-15/C1007 | $4,675.00 |
| 12/01/2015 | AI-15/H1001 | $13,282.50 |
| 12/01/2015 | AI-15/D1006 | $20,615.00 |
| 12/01/2015 | AI-15A1021 | $30,245.00 |
| 01/01/2016 | AI-15/B1010 | $16,500.00 |
| 01/01/2016 | AI-15/G1005 | $8,400.00 |
| 01/01/2016 | AI-15/F1006 | $12,330.00 |
| 01/01/2016 | AI-15/H1002 | $12,390.00 |
| 01/01/2016 | AI-15/D1007 | $11,875.00 |
| 01/01/2016 | AI-15/A1023 | $16,330.00 |
| 01/20/2016 | AI-16/C1001 | $7,740.00 |
| 01/20/2016 | AI-16/A1001 | $10,350.00 |
| 01/20/2016 | AI-16/B1001 | $8,075.00 |

Total amount due                                   **$377,143.04**

90.     All of the forgoing services were performed by CYSTEMS at Azur's

insistence and request and pursuant to the written agreement and the Work Orders.

91.     Sometime during September, 2015, CYSTEMS and Debtors entered into a

verbal agreement to run contemporaneous with the written Agreement No. 1 (above), under

which CYSTEMS agreed to continue to provide the services required under the Agreement No. 1 provided that payment on all open invoices would be made promptly. ("Agreement No. 2").

92.    Prior to providing any services during December 2015 and January 2016, CYSTEMS sought assurances from Ranjani that payment on the pending invoices would be made. Ranjani repeatedly assured CYSTEMS, verbally and in writing, that there were sufficient funds to pay the invoices for services provided by CYSTEMS, and that payment would be made as quickly as possible"

93.    The deposits made from the factor into the Azur accounts in the US show that Azur had ample funds with which to make the payments due to CYSTEMS for each of the above invoices on the dates those invoices were tendered to Azur.

94.    The Debtors transferred funds from the Azur accounts in the US to their offshore accounts in India with the intent to place those funds outside the reach of the creditors of the Debtors, including CYSTEMS.

95.    The Debtors transferred funds from Azur accounts in the US to offshore accounts in India with the intent to place those funds outside the reach of the creditors of Azur, including CYSTEMS.

96.    The balance due to CYSTEMS for all services rendered as stated above and additional costs incurred is **$377,143.04**.

97.    As a direct and proximate result of Debtors' actions as alleged herein, CYSTEMS has suffered injury to its business or property, the full amount of which is not yet determined, but which is believed to be not less than **$377,701.24**.

## COUNT I
## [Bankruptcy Code §523(a)(2)(A)]

## CYSTEMS LOGIC, INC.'S CLAIM FOR AN EXCEPTION TO DISCHARGE FOR MONEY, PROPERTY OR SERVICES OBTAINED BY <u>FALSE REPRESENTATIONS.</u>

98.     CYSTEMS realleges paragraphs 1 through 97, both inclusive, of this Adversary Complaint, as though fully set forth as paragraph 98 of this Count I herein.

99.     11 U.S.C. § 523(a)(2)(A) provides that:

(a) A discharge under Section 727 . . . of this title does not discharge an individual from any debt

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

>> (A)   false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

100.    CYSTEMS is a creditor of the Debtors by virtue of a judgment in its favor and against AZUR, Inc. d/b/a AZUR INFOTECH, INC. entered September 21, 2016 in the amount of **$377,701.24** (the "Judgment') in the case more commonly known as *Cystems Logic, Inc. v. Azur, Inc.,* Case No. 16 CV 2603, formerly pending in the United States District Court for the Northern District of Illinois (the "Cystems Judgment").

101.    In their Initial Bankruptcy Schedules filed September 16, 2016, the Debtors listed the debt owed to CYSTEMS in the amount of **$322, 930.31.** The Debtors scheduled the debt as "not subject to offset" and did not list the debt as contingent, unliquidated or disputed.  (See docket entry No. 11, page 11 of 57).

102.    In their Amended Bankruptcy Schedules filed June 27, 2016, the Debtors again listed the debt owed to CYSTEMS as a "business debt" in the amount of

**$322,930.31.** The Debtors scheduled the debt as "not subject to offset" and did not list the

debt as contingent, unliquidated or disputed.  (See docket entry No. 78, page 14 of 41).

103.    Accordingly, based upon the Debtors' Bankruptcy Schedules, CYSTEMS,

has standing to bring this action under Bankruptcy Code §523(a)(2)(A).

104.    Ranjani made representations to CYSTEMS that were materially false and

included but were not limited to the following:

> A)      Azur would retain sufficient funds from the Mohawk contract to
>         make the payments to CYSTEMS in the work orders; and,
>
> B)      Azur would promptly make payment to CYSTEMS of the amounts
>         due under its invoices upon receipt of payments from Mohawk.

(collectively referred to as the "Materially False Representations")

105.    Based on the Materially False Representations, in accordance with

Agreement No. 1 and 2, CYSTEMS provided services to the benefit of the Debtors in an

amount not less than **$377,107.24** for the purpose of permitting the Debtors to meet its

obligations under its contract with Mohawk.

106.    Based on these Materially False Representations, the Debtors induced

CYSTEMS' performance of services in the amount of **$377,107.24** for the purpose of

permitting the Debtors to meet its obligations under its contract with Mohawk.

107.    The Materially False Representations made by the Debtors to CYSTEMS

were made with the intent to deceive CYSTEMS.

108.     CYSTEMS reasonably relied upon the Debtors' Materially False

Representations.

109.    CYSTEMS been damaged because of his reliance on the Materially False

Representations made by the Debtors.

110.    As a direct and proximate result of the Debtors' actions as alleged herein, CYSTEMS has suffered injury to its business or property, the full amount of which is not yet determined, but which is believed to be not less than **$377,701.24**.

**WHEREFORE**, Adversary Plaintiff CYSTEMS LOGIC, INC., respectfully requests that this Honorable Court enter judgment pursuant to 11 USC §523(a)(2)(A) declaring an exception to discharge of all aforesaid amounts due and owing to it in an amount to be determined but not less than **$377,701.24,** plus all interest, costs and attorney's fees as allowed by law; and provide such other relief just in the premises.

## COUNT II
### [Bankruptcy Code §523(a)(2)(A)]

## CYSTEMS LOGIC, INC.'S CLAIM FOR AN EXCEPTION TO DISCHARGE FOR MONEY, PROPERTY OR SERVICES OBTAINED BY <u>ACTUAL FRAUD</u>.

111.    CYSTEMS realleges paragraphs 1 through 97, both inclusive, of this Adversary Complaint, as though fully set forth as paragraph 111 of this Count II herein.

112.    CYSTEMS realleges paragraphs 98 through 110, both inclusive, of Count I of this Adversary Complaint, as though fully set forth as paragraph 112 of this Count II herein.

113.    11 U.S.C. § 523(a)(2)(A) provides that:

(a) A discharge under Section 727 . . . of this title does not discharge an individual from any debt

(2)    for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

(B)    false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

114.    The actions of the Debtors as hereinbefore alleged were entered into by the Debtors willfully and intentionally with the intent to perpetrate a fraud upon CYSTEMS by inducing CYSTEMS to provide the services to Mohawk under the Cystems Subcontract while transferring the payments received by the Debtors from Mohawk to its offshore accounts maintained in India in order to place the Mohawks funds beyond reach of the Debtors' creditors, including CYSTEMS.

115.    The actions of the Debtors as hereinbefore alleged were entered into by the Debtors willfully with the intent to deceive CYSTEMS.

116.    As a direct and proximate result of the Debtors' actions as alleged herein, CYSTEMS has suffered injury to its business or property, the full amount of which is not yet determined, but which is believed to be not less than **$377,701.24**.

**WHEREFORE**, Adversary Plaintiff CYSTEMS LOGIC, INC., respectfully requests that this Honorable Court enter judgment pursuant to 11 USC §523(a)(2)(A) declaring an exception to discharge of all aforesaid amounts due and owing to it in an amount to be determined but not less than **$377,701.24,** plus all interest, costs and attorney's fees as allowed by law; and provide such further relief just in the premises.

**COUNT III.**
**[Bankruptcy Code §523(a)(6)]**

**CYSTEMS LOGIC, INC.'S CLAIM FOR AN EXCEPTION FOR WILLFUL AND MALICIOUS INJURY.**

117.    CYSTEMS realleges paragraphs 1 through 97, both inclusive, of the General Allegations of this Adversary Complaint as though fully set forth as paragraph 117 of this Count III herein.

118.    CYSTEMS realleges paragraphs 98 through 110, both inclusive, of Count I of this Adversary Complaint, as though fully set forth as paragraph 118 of this Count III herein.

119.    CYSTEMS realleges paragraphs 111 through 116, both inclusive, of Count II of this Adversary Complaint as though fully set forth as paragraph 119 of this Count III herein.

120.    11 U.S.C. § 523(a)(6) provides that:

(a)    A discharge under section 727... of this title does not discharge an individual debtor from any debt--

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

121.    The Debtors' actions as hereinbefore alleged were intentional and designed to place the assets of Azur outside of the United States and those beyond the reach of the creditors of Azur, including CYSTEMS.

122.    The wire transfers authorized by the Debtors between December 1, 2014 and January 25, 2016 resulted in the transfer of substantially all of the funds of Azur in the US to offshore accounts in India that were and are under the control of the Debtors.

123.    By removing substantially all of the funds of Azur in the US to offshore accounts in India, the Debtors' actions were either taken for the purpose of causing injury to the creditors of Azur, including CYSTEMS, or had a substantial certainty of causing injury to the creditors of Azur, including CYSTEMS, and were willful.

124.    The Debtors' transfer or disposal of the funds of Azur constitutes a willful and malicious injury to CYSTEMS.

125.     The actions of the Debtors in removing substantially all of the funds of Azur in the US to offshore accounts in India demonstrate that the Debtors never intended to cause Azur to pay the amounts due to CYSTEMS.

126.     By removing substantially all of the funds of Azur in the US to offshore accounts in India that the Debtors personally control, the Debtors converted funds belonging to CYSTEMS to their personal use in an amount not less than **$377,701.24.,** the amount of the judgment entered in favor of CYSTEMS and against Azur Infotech, Inc. by the United States District Court for the Northern District of Illinois on September 2, 2016.

127.     The Debtors' transfer and removal of the funds of Azur in the US to the Debtors' offshore accounts in India constitutes a willful and malicious injury to CYSTEMS and its property.

128.      Each of the acts of each Debtor as alleged herein were intentional, willful and malicious, and entered into to cause injury to the property of CYSTEMS, in an amount to be determined but not less than **$377,701.24**.

129.     As a direct and proximate result of all of the Debtors' actions as alleged herein, CYSTEMS has suffered damages, the full amount of which has not yet been determined, but which is believed to be not less than **$377,701.24.**

**WHEREFORE**, Adversary Plaintiff CYSTEMS LOGIC, INC., respectfully requests that this Honorable Court enter judgment declaring an exception to discharge under 11 USC §523(a)(6) of all aforesaid amounts due and owing to it in an amount to be determined but not less than **$377,701.24**, plus all interest, costs and attorney's fees as allowed by law; and provide such further and other relief just in the premises.

## COUNT IV

### [Bankruptcy Code §727(a)(3)]

### CYSTEMS LOGIC, INC.'S OBJECTION TO THE DEBTORS' DISCHARGE UNDER BANKRUPTCY CODE §727(a)(3).

130.    CYSTEMS realleges paragraphs 1 through 97, both inclusive, of the General Allegations of this Adversary Complaint as though fully set forth as paragraph 130 of this Count IV herein.

131.    CYSTEMS realleges paragraphs 98 through 110, both inclusive, of Count I of this Adversary Complaint, as though fully set forth as paragraph 131 of this Count IV herein.

132.    CYSTEMS realleges paragraphs 111 through 116, both inclusive, of Count II of this Adversary Complaint as though fully set forth as paragraph 132 of this Count IV herein.

133.    CYSTEMS realleges paragraphs 117 through 129, both inclusive, of Count III of this Adversary Complaint, as though fully set forth as paragraph 1133 of this Count IV herein.

134.    11 U.S.C. § 727(a)(3) of the Bankruptcy Code provides that:

(a) The court shall grant the debtor a discharge, unless –

    (3)  the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under the circumstances of the case[.]

135.    The Debtors failed to maintain books and records of their financial condition and business transactions for the 1-year period prior to filing the petition, and

such failure made it impossible to ascertain the Debtors' financial condition and material

business transactions. Specifically, but without limitation, the Debtors failed to produce

the following documents:

A.   The Debtors' individual income tax returns (Form 1040) for 2016.

B.   The corporate income tax returns for Azur for 2016.

C.   The bank accounts, business accounting records, QuickBooks accounting
records, and any other financial records for Azur for periods after April 1,
2015 and prior to August 31, 2016.

D.   The bank accounts, business accounting records, accounting
records, and any other financial records for Bharat Azur IT Private Ltd. for
periods after April 1, 2015 and prior to August 31, 2016.

E.   All documents, including bank statements and check registers for the 11
foreign bank accounts disclosed by Mithila to the IRS on his Form 1040
for 2014 and 2015.

F.   All documents, including bank statements and check registers for the 3
foreign bank accounts disclosed by Ranjani to the IRS on her Form 1040
for 2014 and 2015.

G.   All email communications for the business transactions of the Debtors,
Azur and Bharat for the 1 year period prior to filing the petition.

H.   The personal and business financial statements submitted by Debtors to
Wells Fargo Bank.

136.   As hereinbefore alleged, the Debtors have concealed, destroyed or failed

to keep or preserve any recorded information from which their true financial condition or

business transactions may be ascertained.

137.   The Debtors did not report any records as stolen or destroyed in the year

prior to filing bankruptcy or since filing bankruptcy on their Statement of Financial

Affairs or Amended Statement of Financial Affairs.

**WHEREFORE**, Adversary Plaintiff CYSTEMS LOGIC, INC., respectfully prays for an order, pursuant to 11 U.S.C. § 727(a)(3), **DENYING** the Debtors a discharge, and for such other further relief as this Court deems just.

**COUNT V**

**[Bankruptcy Code §727(a)(3)]**

**CYSTEMS LOGIC, INC.'S OBJECTION TO THE DEBTORS' DISCHARGE
UNDER BANKRUPTCY CODE §727(a)(3).**

138.    CYSTEMS realleges paragraphs 1 through 97, both inclusive, of the General Allegations of this Adversary Complaint as though fully set forth as paragraph 138 of this Count V herein.

139.    CYSTEMS realleges paragraphs 98 through 110, both inclusive, of Count I of this Adversary Complaint, as though fully set forth as paragraph 139 of this Count V herein.

140.    CYSTEMS realleges paragraphs 111 through 116, both inclusive, of Count II of this Adversary Complaint as though fully set forth as paragraph 140 of this Count V herein.

141.    CYSTEMS realleges paragraphs 117 through 129, both inclusive, of Count III of this Adversary Complaint, as though fully set forth as paragraph 141 of this Count V herein.

142.    CYSTEMS realleges paragraphs 130 through 137, both inclusive, of Count IV of this Adversary Complaint, as though fully set forth as paragraph 142 of this Count V herein.

143.    Section 727(a)(4) of the Bankruptcy Code provides that:

(a) The court shall grant the debtor a discharge, unless -- (4)  the debtor knowingly and fraudulently, in or in connection with the case - (A) made a false oath or account . . .

144.    Each Debtor made a false oath in executing the Declaration under Penalty of Perjury by an Individual Debtor attached to their Initial Bankruptcy Schedules and Statement of Financial Affairs filed September 16, 2016 when he/she:

    A.    Omitted and failed to schedule any interest in Bharat Azur IT Private, Ltd.; and

    B.    Omitted and failed to schedule their shares owned in Bharat Azur IT Private, Ltd.; and

    C.    Omitted and failed to schedule any interest in any of the Business Entities for which the Debtor incurred business debt and received income in the last six years, including Azur, Inc. Azur Infotech, Inc. Azur Global Inc., and LFLN, LLC

145.    Each Debtor made a false oath in executing the Declaration under Penalty of Perjury by an Individual Debtor attached to their Amended Bankruptcy Schedules and Statement of Financial Affairs filed June 27, 2016 when he/she:

    A.    Omitted and failed to schedule any interest in Bharat Azur IT Private, Ltd.; and

    B.    Omitted and failed to schedule their shares owned in Bharat Azur IT Private, Ltd.; and

    C.    Omitted and failed to schedule any interest in any of the Business Entities for which the Debtor incurred business debt and received income in the last six years, including Azur, Inc. Azur Infotech, Inc. Azur Global Inc., and LFLN, LLC

146.    Mithilia made a false oath in his sworn testimony at his Creditor's meeting on October 6, 2016 when he stated under oath that:

    A.    The shares of Bharat Azur IT Private, Ltd. were owned by Azur Infotech, Inc.; and

    B.    Bharat Azur IT Private, Ltd. had "filed for bankruptcy;" and,

C.      He had contributed "hundreds of thousands of dollars of his own money as a capital contribution to Azur Infotech, Inc.

147.    Mithilia made a false oath in executing the Declaration under Penalty of Perjury by an Individual Debtor attached to their Initial Bankruptcy Schedules and Statement of Financial Affairs filed September 16, 2016 when he:

A.      Failed to disclose the identity bank account number and other information pertaining to the 11 foreign bank accounts he reported to the IRS on his Form 1040 for 2014 and 2015.

148.    Ranjani made a false oath in executing the Declaration under Penalty of Perjury by an Individual Debtor attached to their Initial Bankruptcy Schedules and Statement of Financial Affairs filed September 16, 2016 when she:

A.      Failed to disclose the identity bank account number and other information pertaining to the 11 foreign bank accounts she reported to the IRS on her Form 1040 for 2014 and 2015.

149.    Mithilia's actions and statements as alleged herein were knowing and fraudulent.

150.    Ranjani's actions and statements as alleged herein were knowing and fraudulent.

**WHEREFORE**, Adversary Plaintiff CYSTEMS LOGIC, INC., respectfully prays for an order, pursuant to 11 U.S.C. § 727(a)(4), **DENYING** the Debtors a discharge, and for such other further relief as this Court deems just.

## COUNT VI

## [Bankruptcy Code §727(a)(5)]

## CYSTEMS LOGIC, INC.'S OBJECTION TO THE DEBTORS' DISCHARGE.
## UNDER BANKRUPTCY CODE §727(a)(5).

151.    CYSTEMS realleges paragraphs 1 through 97, both inclusive, of the General Allegations of this Adversary Complaint as though fully set forth as paragraph 151 of this Count VI herein.

152.    CYSTEMS realleges paragraphs 98 through 110, both inclusive, of Count I of this Adversary Complaint, as though fully set forth as paragraph 152 of this Count VI herein.

153.    CYSTEMS realleges paragraphs 111 through 116, both inclusive, of Count II of this Adversary Complaint as though fully set forth as paragraph 153 of this Count VI herein.

154.    CYSTEMS realleges paragraphs 117 through 129, both inclusive, of Count III of this Adversary Complaint, as though fully set forth as paragraph 154 of this Count VI herein.

155.    CYSTEMS realleges paragraphs 130 through 137, both inclusive, of Count IV of this Adversary Complaint, as though fully set forth as paragraph 155 of this Count VI herein.

156.    CYSTEMS realleges paragraphs 138 through 150, both inclusive, of Count V of this Adversary Complaint, as though fully set forth as paragraph 156 of this Count VI herein.

157.    11 U.S.C. § 727(a)(5) of the Bankruptcy Code provides that:

(a) The court shall grant the debtor a discharge, unless –

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

158.    Defendant has failed to explain the loss of numerous items of property in which they had an interest as of the date of the petition, including but not limited to the following:

A.    The shares of Bharat Azur IT Private, Ltd.

B.    All assets and cash in the name of Bharat Azur IT Private Limited.

C.    The disposition and location of all investments made by Bharat Azur IT Private Ltd.

D.    The location and amount of all assets transferred from the accounts of Bharat Azur IT Private Ltd.

E.    The disposition and location of all equipment of Azur.

F.    The disposition and location of all accounts receivable of Azur.

G.    The disposition and location of all cash transferred from all bank accounts in the name of Azur.

H.    All assets and cash in the name of Ignis Performance, LLC.

I.    All assets and cash in the name of Rezilyens, LLC.

J.    All assets and cash in the name of LFLN, Inc.

K.    All cash and accounts receivable held by Front Range Factoring in the name of or held for the benefit of the Debtors and/or Azur Infotech, Inc.

L.    The amount of all payments made by Front Range Factoring to the Debtors and/or Azur Infotech, Inc. on or after November 1, 2015.

**WHEREFORE**, Adversary Plaintiff CYSTEMS LOGIC, INC., respectfully prays for an order, pursuant to 11 U.S.C. § 727(a)(5), denying the Debtors a discharge, and for such other further relief as this Court deems just.

Respectfully submitted,
**CYSTEMS   LOGIC,   INC,   Adversary
Plaintiff**
 /s/ Herman J. Marino_____
 by:     one of its attorneys

Herman J. Marino (Atty. ID #1765817)
Danielle K. Kegley (Atty. ID #6320903)
53 West Jackson Boulevard, Suite 1557
Chicago, Illinois 60604
(312) 347-9990
FAX: 312-347-9990
hjmarino@marinolaw.net
dkegley@marinolaw.net